Mr. Wallace. Thank you, Your Honor. Good morning. This is Darian Wallace on behalf of the appellant and patentee, Venus. It would be difficult to find a case in which the lack of diligence in the discovery of prior art was more egregious than in this case. Let me ask you first. Sixteen B-3 doesn't mention diligence, unlike other sections of Rule 60. Is there any circuit other than the Ninth Circuit which has read a diligence requirement into B-3? There is the dicta in the First Circuit case, Anderson, that CAP Export cited. However, the specific to the words due diligence is not in any of the other circuits. However, all of the circuits have the same concept, and that is the concept that the misconduct prevented the movement from fully and fairly presenting its case, and that fairly is determined to be diligence. Most of the circuits cite Moore's Federal Practice, which says that Rule 60 B-3 should not be a reward to the lazy litigant who did not adequately investigate his or her case. So that's where the diligence comes in, and that's what the Ninth Circuit just made explicit. Is someone in one of these proceedings not entitled to rely on testimony by the opposing party as being truthful? Of course it's entitled to rely, but the question is whether that absolves the party from an obligation to be diligent, and simply because a deponent might have a bad memory or might even make a misrepresentation, that doesn't mean that the party under Rule 60 B-3 has no obligation to be diligent. So you're saying trust but verify? Well, actually, no, Your Honor. Simply because one deponent might not know about prior art doesn't mean that the prior art isn't there, and there's always an obligation from every prior art. There is always an obligation from every patent litigant to propound interrogatories directed to prior art, specifically to on-sale prior art. There's an obligation to propound interrogatory? Why? Well, in many circuits, Your Honor is correct that there is no obligation because it has been done for so many years that it has been incorporated into the patent local rules. For example, the patent local rules of the Northern District of California, which have been adopted by many other districts, and in the patent local rules, the patentee has an obligation within 14 days of the case management conference to disclose all documents that, for example, relate to the sales or on-sale activity. But in districts that don't have patent local rules the old-fashioned way, it is the obligation of the infringer to find out that information through traditional discovery mechanisms, and one of them is interrogatories. Zenas presented expert testimonial evidence, actually two declarations, one from Judge Experience, a patent litigator with over 100 patent cases, that said that you do not meet your standard of care as a patent litigator if you don't do those three things. Request for production of documents under Rule 34, asking for all on-sale prior art, and interrogatories under Rule 33, asking to identify on-sale prior art. In fact, the declaration from Mr. Marino said that the law firms that he has been at have standard interrogatories for patent cases, and he teaches law at UC Berkeley and the University of Santa Clara, and that is what he teaches in his class, and I believe it is true that all... Whether it is commonplace for people to do particular things doesn't mean that if they are lied to by the other side that they are going to lose their right to challenge the resulting judgment because they could have done something more in theory. Well, Your Honor, it's not doing something more. In this case, they did nothing at all. Well, they asked your witness about it. No, Your Honor. That was not the full deposition. That was before fact discovery had opened, and the district court forbade the parties from discovery into anything other than the issue of standing. So naturally, the witness didn't prepare himself for issues of validity, for example, and simply his recollection hadn't been refreshed. There were no requests for production of documents before that to ask him about, and he did not remember. He didn't lie. Well, the court made a contrary finding, didn't it? It seems to me the court is saying that not only was it exceedingly unlikely that he did not remember the receipt of the bids, but that he made an affirmative misrepresentation. Right. The district court specifically did not say it was an intentional misrepresentation. I don't know what... An affirmative misrepresentation is not intentional? No. He forgot. He didn't remember. Well, the court said it was highly improbable that he was unaware of both the patent activities and implausible that he did not remember the shipments. That's correct, and I believe that the district court was incorrect because... Right. But if we credit the district court's findings on those points, then the issue of the case doesn't it? I believe the district court was relying on incorrect assumptions. For example, the court found that it was highly improbable that Mr. Lorry didn't remember things because I passed a note to him right as we were discussing that telling him not to mention his company Yosama. Well, it turns out that that was a fabrication by CapExport, and I never passed any note. In fact, the court mentioned nine times in the order that concealing the identity of Yosama showed this malfeasance. Well, the identity of Yosama had nothing to do with concealing this prior art because the prior art was sold by HQB exactly like the deponent said his company was called, and the invoices upon which CapExport relied in its 30B6 motion were invoices to HQB. So the inferences made by the district court were just incorrect to... Let's assume that we reject that, and we find that the district court found that your client lied and that that finding is not clearly erroneous. What's the matter then with the district court's decision to reopen on that basis? Because under Ninth Circuit law, due diligence is required. Yeah, but there's no Ninth Circuit case that says due diligence requires you to find out if your opposing party is lying, right? It was not necessary to find the misrepresentation in order to find the prior art. Okay, but I don't think you're accepting my hypothetical. I'm assuming that your client lied and the district court found that your client lied. So what Ninth Circuit case says that under those circumstances, you have due diligence to find out if the person is lying? In Casey, the seminal case, it says the misconduct would not have been discoverable by due diligence. The misconduct is the concealment of the shipments of beds. It is that misconduct that had to be found by due diligence. You still have to be diligent. You can't say, oh, there was a misrepresentation, so we don't need to look. That language that the fraud or misconduct must be discoverable by due diligence is cited in over 50 cases. That's the law. If there are no further questions, I'll reserve the remainder of my time for rebuttal. Okay, thank you. Mr. Beitschman? Thank you, Your Honors. On behalf of CapEx IV, good morning. May it please the court. I think this court just hit the nail on the head in asking the same question in the inverse. There are no cases that uphold the proposition that a Rule 60 motion should be denied solely because the other side was not diligent enough in discovery to discover the misconduct or as this court's called, the lie. Casey, in fact, has left that wide open. The law is not the fact that Casey sets forth the proposition that diligence requires this discovery. Casey in and of itself was a run-of-the-mill discovery issue. That issue was the serving party served discovery two and a half weeks before the cutoff. The defendant Albertson's refusal to respond to that discovery didn't constitute a fraud. It just said, well, the discovery is late. We don't have an obligation to produce. The Ninth Circuit then affirmed the district court's denial of the Rule 60 on those facts but stated, it is significant to note that this is not a case in which it is alleged that Albertson's possessed Smith's employment records but falsely denied having them. That's the fact pattern here, completely different from Casey. In this instant matter, the controlling cases are more along the lines of Hazel Atlas and the Biscayne's Corp case that we cited in our briefs that stand for the proposition that no matter what the level of discovery is engaged in and notwithstanding any due diligence, these facts couldn't have been discovered because they were intentionally and materially withheld from cap export. And with that, I fall back to the prior art discussion. Wait a minute. Couldn't have been? Yes, Your Honor. I'm not sure that's the case. I'm sorry. I didn't hear the question, Your Honor. You say couldn't have been discovered. I don't think there's a finding here that it couldn't have been discovered. I understand. I understand. As the district court pointed out, we had conducted several prior art searches and the district court noted that given the relatively unique nature of the relevant evidence that was being sought, the district court's analysis of prior art specifically made mention of the fact that the prior art searches are mostly document focused, making the existence of physical products embodying these claims challenging to find. It also went on and noted that the evidence concealed by Mr. Lowery's misrepresentation were not documents discoverable in prior art searches, but in fact were concealed purchases from a Malaysian furniture company. And with the district court was addressing in that particular instance was the fact that while it may have been able to, while this evidence may have been discoverable by other means, those means were so far remote from where we were at that time in the case because of the fact that during that deposition of Mr. Lowery, he testified, I believe it was five or six different times that he had no recollection of the purchase of these beds. He had purchased 1,205 units of the exact same bed over three years in three different shipments. And interestingly, the last shipment shipped in the same year, 2013, as when his company, Zinus, filed for the patent. And that's why the court found it disingenuous to believe that his position as president of the company, he would have no knowledge of those purchases and shipments at the time of the filing of the patent. And at the time he was designated as the expert in the case. I think the court used the word implausible and this court cited that this morning. So from that perspective, that evidence may have been out there, but just as Zinus's testimony, the court may have been out there testifying witness. And given the fact that that was the direction... Suppose the witness lied by saying that a particular document didn't exist, but that you had the document and it had been produced and discovered. Would that be a full and fair opportunity to litigate? If I'm understanding the court's question, that would be the deponent lied about the existence of the document, but the document was in fact in our possession vis-a-vis a discovery mechanism? Yeah. Yes, your honor. Then in that particular instance, that's more similar to, I believe it was the MV Peacock case where evidence was available and there was a lack of due diligence and following up on it and assumptions were made versus having that information. So if evidence were in the possession of the party and then the deponent thereafter lied, I imagine that evidence would be used as impeachment mechanism during the deposition and that would have triggered and or allowed or would have initiated the response for further discovery on that topic. But that in fact wasn't the case here because the first discovery mechanism deployed was that early deposition in the case where Mr. Lowery made, as the court found, these affirmative misrepresentations as to these material components of the case and then that was... Was he a 30B6 witness? I'm sorry, your honor? Was he testifying as a 30B6 witness? No, your honor. At that time, he was testifying as the patent expert designated by Zinus. In his subsequent deposition, he testified as the 30B6. Or I may have misspoken. I think, no, I apologize. He was not designated 30B6. He was ordered... That's right. And now that I'm correct, after the first round of hearings on the motion on the Rule 60 in the district court, the district court judge asked the parties to go and ascertain these videotaped depositions because the court wanted to firsthand view the credibility of the various witnesses that had supplied the declarations. So, no, both times he was not testifying as 30B6, your honor. I apologize. Okay. I think it's important to note that... If I may. Thank you, your honor. I think it's important to note that the moving party exercise due diligence simply by initiating discovery requests. And I've already mentioned the MV Peacock case and the Hazel Atlas case. But what's important to note is that the fact that there are varying interpretations of diligence underscores the fundamental premise that the courts are given discretion to apply a flexibility approach. The courts look at these matters. The district courts in the Ninth Circuit are to look at these matters on a fact-based approach. And given what this court has noted, it's clearly an egregious set of facts with the misrepresentations that the court cited. And that's why it is, in fact, in the Ninth Circuit, this is an abuse of discretion standard that's applicable to both the matters on appeal here. And why that's important is because this court I heard early this morning saying that should this court credit the district court? And I would advance the proposition that this court must credit the decisions of the district court because of the fact that this is an abuse of discretion standard and because of the fact that the district judge had the opportunity, and in fact ordered the opportunity, to gather this evidence, to gather videotaped evidence, and to be able to review firsthand the credibility of these witnesses. And it did so very, very carefully and was very concise and carefully analyzed all of this evidence in its ruling on the Rule 60 motion. And with that, if there's no further questions from the court, I would cede the balance of my time. I do have a question, just quickly. Do you recall what the initial ask in this case was in terms of damages? I gather that there was ultimately a settlement for around a million dollars, right? Initially, the ask was very high. There were some sales documents that were exchanged during discovery, but I don't believe I recall hearing a specific number being exchanged. But they were asking for damages to the Korean company, the Zionist entity that's in Korea. There's multiple Zionists that we've learned over the years. But saying that that company had been damaged by the alleged infringed sales. Okay. All right. Thank you. Thank you, Your Honor. Okay. Mr. Wallace? Thank you. I'd like to talk about the judge's findings of Mr. Lorry, that it was improbable that he had no recollection of the shipment. That's not really relevant. He did have a recollection of the shipments. The question was, did he have a recollection of the structure of the beds? And that was not part of the business that he was in. And he didn't see that. And he recalls that the beds had a central wooden beam that didn't fit in the headboard. So that's why he didn't think that the beds that he had purchased fell within the question of whether all the parts fit in the headboard. To the law, Cap Export gets it totally wrong about the de novo review. There is no deference given to a district judge who gets the law wrong. And in this case, the law is clear in the Ninth Circuit that due diligence is always required. It's never waived. And it's never waived for a misrepresentation. The rule 60B3 says for fraud or misrepresentation or misconduct. And Casey says that the rule 60B3 requires that the fraud not be discoverable by due diligence. So the fraud or misrepresentation. So in a case where there's a misrepresentation, there has to be due diligence. That doesn't waive it. And in this case, the court, the district court waived the due diligence requirement because Cap Export engaged in no discovery whatsoever into that alleged misrepresentation or the misconduct that was the basis for the 60B3 motion. When you say that the district court made a legal error by finding that there was no requirement of due diligence. But as I read the district court's opinion, the court did acknowledge that there was such a requirement. Due diligence said that in the case of in a footnote at the end of the opinion, I think it was said that that due diligence requirement might be lessened, although not avoided altogether, but lessened in the case of a misrepresentation. Where is the legal error there? I mean, I understand you say factually that you think that the district court erred in finding that there was due diligence in this case, but I'm not seeing a legal error. The legal error is that the court found that a lack of due diligence is acceptable in these circumstances or in this context. Well, in these circumstances, being in the situation where there's misrepresentation, I read the footnote, we're talking about the footnote in appendix 21, I think, as saying that the due diligence requirement may be lessened in the case of a misrepresentation, not that it is avoided altogether. Isn't that a fair assessment of what the court was saying? Well, diligence might be lessened, but due diligence is a standard, and you can't go below due diligence, and the standard of due diligence isn't lessened in certain circumstances. And Zenas was the only party that entered evidence of what that standard is, and the standard of due diligence never falls below the standard of care, and CapExport didn't meet the standard of care because it did nothing, absolutely nothing. After fact discovery opened, it didn't do anything to find on-sale prior art. Well, correct me if I'm wrong, the declarations that you submitted weren't addressed, if I recall correctly, maybe I'm wrong about this, to what should have been done in the case of a misrepresentation, they just talked about what the diligence usually is in a case to discover prior art, right? That's incorrect, Your Honor. At appendix 1068, Judge Rader says, fundamental attorney competence requires the service of such formal discovery whether a particular witness, for example, the president or patent owner Zenas, might testify inaccurately in a deposition or might make deliberate affirmative misrepresentations in an effort to conceal prior art. The standard of care demanded of an attorney to request production of documents for prior art must be made in every patent infringement case. Okay, but I think you're not addressing the question I'm asking. My understanding is that they're talking about basically what attorney competence requires, what an attorney performance is required as a practical matter, rather than addressing the Ninth Circuit standard of what constitutes diligence in connection with 60B3, right? Um, Judge Rader says that the standard under 60B3 for due diligence can never fall below the standard of care. So that's the lower limit of it. Okay. That's in, on, as I said, appendix 1068, paragraphs 29 and 30. Okay. So in this case, CapExport did nothing. It asked for no request for production of documents, no interrogatories, and it didn't take the 30B6 deposition of Zenas. Never did. The case, he says that that due diligence has to be before or during the proceedings. So the deposition of Mr. Lowry after the motion doesn't count. And the court also relied on some supposed online searches, database searches. But even the district court recognized that those searches aren't going to find non-documentary evidence like on sale prior art. But yet the court said, well, because of the unique nature of that prior art, he wasn't requiring it. But there's nothing unique about on sale prior art. It comes up in every single patent case. This case, as patent cases go, it struck me that this case is not a particularly big case. I think the settlement, if I recall, was around a million dollars. Do you think that due diligence is the same level as required for cases regardless of the size of the cases? Or is that a factor that plays into it? That is a factor. It was in both Mr. Marino's declaration and Judge Rader's declaration. So a lot of patent cases settle right away for a nuisance value and don't go very far. And in those cases, it's common not to put a lot of effort into discovery yet. But in a case that goes to summary judgment of infringement, for example, where the amount at issue is over a million dollars, then yes, you have to do the minimum steps for discovery of every patent case. And again, both of the expert testimonial evidence that Zenith presented state that. And CAF Export didn't have any evidence about what the standard of care or the standard of due diligence is. Okay. Thank you. Okay. I thank both counsel. The case is submitted. Thank you. The Honorable Court is adjourned until tomorrow morning at 10 a.m.